PeaesoN, J.
 

 “
 
 If two fight upon a sudden quarrel and one 'be killed, it is but manslaughter, although the death is caused by the use of a
 
 deadly
 
 weapon.”
 

 ; But if in such case the killing be committed in an
 
 unusual manner,
 
 showing evidently, that it is the effect of deliberate wickedness — malice—not passion, it is murder; although there be a high provocation.
 
 State
 
 v.
 
 Currie,
 
 1 Jones’ Rep. 283.
 

 In the case now under consideration, the quarrel was sudden, and the death was caused by the use of a deadly weapon : so,
 
 *409
 
 it falls within the general rule, and is but manslaughter, unless the killing was in an
 
 unusual
 
 manner; showing
 
 evidently,
 
 that it was the effect of wickedness,
 
 i. e.
 
 malice, not passion.
 

 The question is, what unusual circumstance attended the killing in this case, so as to show, evidently, that it was the effect of wickedness,
 
 i. e.,
 
 malice, not passion ; and make it a case of murder from malice
 
 implied?
 

 An assault
 
 “
 
 is a legal provocation; the party need not wait till he receives a blow, for the act of offering or attempting to give a blow, “ the rushing upon him for that purpose” is the beginning of the fight.
 
 State
 
 v. Davis, 1 Ire. 125. When he sees that a fight is inevitable or impending, when the fight is commenced by the overt act of rushing upon him with an intent to strike, his passions are aroused and the
 
 furor breves
 
 takes possession of him before he receives a blow.
 

 The common law is based upon an intimate knowledge of human nature. Does not every one, who has ever observed the parties just as a fight begins, know, that at the instant the parties rush at each other, and before a blow is actually struck, the fight in fact begins, the passions are aroused, the parties are no more under the sway of reason, than after blows are actually passed ?
 

 In the case under our consideration, when the deceased, hearing what had been said by the prisoner to his (deceased’s) wife, pulled off his coat and came into the yard in a threatening attitude, throwing down his hat, and said to the prisoner “if you have anything to say I am your man,”
 
 and advanced towards the prisoner in a menacing
 
 manner,
 
 with his half brother close to him, with a pistol in his possession,
 
 he (the dec’d.) committed an assault on the prisoner, and the killing being upon a sudden quarrel, although done with a deadly weapon, was but manslaughter, unless done in an unusual manner, showing evidently a wickedness of' heart, from which the law would imply malice, within the meaning of the terms “ malice aforethought.”
 

 So the question is, was the killing done in an unusual manner, showing this wickedness ?
 

 
 *410
 
 If, when the deceased committed the assault, by rushing towards the prisoner “in a menacing manner, with his half brother close to him, with a pistol in his possession,” the prisoner had, with a stick or a stone, or a pistol, given the deceased a mortal wound, the killing would have been manslaughter, because of the'legal provocation by reason of “ the assault.” If the prisoner had “held the knife up in his hand,” no distinction could be taken between the knife and a stick, or a stone, or a pistol, being all of them deadly weapons. So, if the killing amounted to murder, it was an exception to the general rule, by reason of the unusual manner in which the knife was used.
 

 This makes the case turn upon the testimony of the mother of the deceased ; and such is the effect given to her testimony by the manner in which the case is put to the jury. She swore “ when the prisoner turned around from the fence he put the knife
 
 open in Ms pocket,
 
 and advanced two or three steps meeting the deceased.”
 

 This, taken in connection with the Other testimony, and the doctrine of homicide distinguishing manslaughter from murder, above stated, made it the duty of the presiding Judge to charge the jury that as it was a'killing upon a sudden quarrel, and the assault made by the deceased was a legal provocation, it was a case of manslaughter, unless there "was some circumstance, showing evidently that the prisoner did the act from pre-conceived malice ; or unless the manner of killing was so unusual as clearly to show that the prisoner acted, not from the present provocation, by reason of the assault, but from wickedness of heart, which furnishes a ground from which the law implies malice.
 

 There were three points of view in which the case ought to havo been presented to the jury, admitting' the testimony of this witness to be true :
 

 1st. If, when the deceased came out of the house, and made the assault by
 
 rushing towards the prisoner,
 
 who was standing at the fence, whittling with his knife, the prisoner, in the hurry of the moment, when intent only upon meeting the ad-
 
 *411
 
 vanee of the deceased, put his knife into his pocket, opera,without then thinking of the circumstance, or of the use he would make of it in the rencontre, the killing came under the general rule and was manslaughter.
 

 2nd. If, when the deceased came out of the house and made the assault, the prisoner
 
 put his Tmife open in his pocket,
 
 on purpose, with an intent to use it if what occurred afterwards should make its use necessary, or should prompt or impel him in self-defense to make use of it, still, there being a
 
 legal provocation,
 
 the killing was but manslaughter: because there was nothing from which the law would imply malice.
 

 3rd. If, when the deceased came out of the house, the prisoner had put his knife in his pocket
 
 open, with cm intent to conceal the fact of his being thus armed and thereby drawn
 
 on the deceased as if they were to have an ordinary fight, he having the purpose of taking an
 
 undue
 
 advantage and giving
 
 a fatal blow uncmares,
 
 then, notwithstanding the apparent provocation, the law implied such a wickedness of heart, and a disposition fatally bent on mischief,” as amounted to malice aforethought, and made the killing
 
 murder.
 

 In this connection, his Honor might have called the attention of the jury to the fact, that it is not usual for one to put his knife into his pocket without shutting it, (because of the danger of being cut:) but then, in all fairness, he ought to have given the prisoner the benefit of the fact, that the “ assault” was not an ordinary one “ where two, upon a sudden quarrel, agree to fight;” bnt the fight was
 
 begun
 
 by the deceased : “ his rushing upon the prisoner with an intent to strike him,” was an assault — a “ legal provocationand he was
 
 bached,
 
 (using a common but expressive word) that is, had the presence and support of his half brother with a pistol in his hand, and he had other aiders, &c., after the fact; for, upon the instant, a sister of the deceased
 
 hit
 
 the prisoner with a
 
 rock:
 
 the father of
 
 the
 
 deceased knocked the prisoner down twice with a board, and the half brother of the deceased, who had just before attempted to use his pistol, with an intent to kill the prisoner, snapped his pistol at him : so the prisoner
 
 *412
 
 was in the “midst of enemies.” See
 
 State
 
 v. Hill, 4 Dev. and Bat. 491.
 

 Pee Cueiaw. There must be a
 
 venire de novo.